UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 20-mj-238 (ZMF) |
| | : | |
| SCOTT DEL MASSON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Scott Del Masson (hereinafter, "defendant") be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

I. **Procedural History**

On December 9, 2020, the government sought and obtained a complaint charging the defendant with Entering or Remaining in Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1) and with Unlawful Entry in violation of D.C. Code § 22-3302(b). At the defendant's initial appearance on December 9, 2020, the government orally requested a forensic examination of the defendant and pre-trial detention.  A status hearing and detention hearing was set for December 11, 2020 to allow defense counsel time to identify acceptable conditions of release.

I.   **Legal Authority and Argument**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review of the facts and circumstances in this case require the Court to conclude that the defendant is a serious risk of flight and there are no condition or combination of conditions that would assure the safety of the community and the defendant's presence at future court proceedings. Accordingly, the defendant should be held pursuant to 18 U.S.C. § 3142(f)(2).

A.   **Nature and Circumstances of the Offense Charged**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of pretrial detention. On December 8, 2020, the defendant entered, remained in,

and attempted to proceed further into the restricted areas of the White House Complex. The White House Complex, which includes, among other things, the White House Mansion and the White House grounds, is a restricted area in Washington, D.C.  Only people with authorized access are permitted inside the White House complex, which has both permanent and movable security barriers surrounding it ("security barriers").  There are signs posted along the security barriers that state "Restricted Area, Do Not Enter." On Tuesday, December 8, 2020, the restricted area around the White House included the closure of Lafayette Park from 17th Street to 15th Street, up to H Street Northwest in preparation for Inauguration Day.

The defendant was observed by a United States Secret Service (USSS) Uniformed Division Officer walking down Pennsylvania Avenue. At the time, Pennsylvania Avenue was closed to the public. The officer stopped the defendant and asked if he had proper credentials to be in the area. He did not. The officer provided an opportunity for the defendant to leave the area without incident, providing him direction on how to exit the restricted area. Instead of continuing to the identified exit, the defendant stopped in front of the Dwight D. Eisenhower Building, stepped up onto a fixed bench, and jumped into the northeast courtyard.

The Dwight D. Eisenhower Building is immediately adjacent to the White House and is within the restricted area of the White House Complex. The officer saw the defendant jump into the courtyard, stumble, and immediately stand up. The officer believed that the defendant was attempting to proceed farther into the restricted area of the complex where employees and other authorized personnel were present. Concerned for the safety of those inside the building, and the security of the complex overall, the officer jumped over the fence himself, falling an estimated eight feet.

To the extent that the defendant ultimately proved non-threatening, his actions cause and can cause dramatic action to be taken by the U.S. Secret Service, whose job it is to protect one of the most secure compounds in the country. This behavior is thus reckless and dangerous.

### B. Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence against the defendant, is substantial and weighs in favor of detention. The defendant was provided clear notice by a law enforcement officer that the area was restricted (in addition to the numerous security barriers and posted notices). Not only did the officer provide warnings, but he also provided the defendant the opportunity leave the restricted area and depart without incident. Instead, the defendant chose to throw himself over a barrier and further into the restricted area of the White House Complex.

### C. The Defendant's History and Characteristics

Following the December 8, 2020 arrest of the defendant, U.S. Secret Service ("USSS") agents identified two prior instances in which the defendant was interviewed by USSS personnel near the White House.

The defendant was interviewed by the USSS on June 11, 2020 near the southwest corner of Lafayette Park. The defendant told USSS personnel that he wanted to speak to the President of the United States. The defendant said that he hitchhiked from Missouri and had been in the Washington, D.C. area for the last four weeks.  He said that he came to the White House to meet with, "Darryl" and President Trump.  When asked who "Darryl" was, the defendant explained he was the head of Congress. The defendant stated that "Darryl" was supposed to set up a meeting with President Trump, who would help him get his kids back. The defendant said he wanted to

speak with President Trump about, "Him doing God's work, justice, peace and bringing back the dead."

The defendant expressed several times throughout the interview, "I know this sounds crazy, but I'm not crazy." The defendant said that he would be staying in the area until he made contact with "Darryl." The defendant was again interviewed by USSS law enforcement personnel on June 18, 2020 in Lafayette Park. The defendant said that he wanted to speak with "Darryl" in regards to his children. He said that since everyone knows Darryl, President Trump may also know him. He told agents that he has "no problem" with Trump.

The defendant's history also shows a pattern of flight and attempts to evade identification. Records checks show that the defendant has a bench warrant for failure to appear in a misdemeanor burglary case in Missouri, is listed as a missing person, and has no fixed address. Records checks also show that the defendant has used numerous aliases. The defendant's social security number is associated with the names Nickolas Del Mitchel, Nikolas Del Mitchel, and Mitchell Del Nickolas, among others. Indeed, the defendant has used these alternative names during previous interactions with the USSS.

### D.     **Danger to the Community**

The defendant hitchhiked from Missouri to D.C., telling agents that he came to the White House to speak to an unknown person "Darryl" and President Trump. The defendant traveled a significant distance, remained in the area for an extended period of time, and eventually took steps to enter the restricted area of the White House Complex. The defendant put himself and law enforcement in harm's way by his actions. If not for the rapid intervention by law enforcement, the defendant could have further compromised the safety of the White House Complex. While he was ultimately safely apprehended with no harm to others, the reality is that

law enforcement must take quick and decisive action to protect the area, and the defendant's erratic behavior – along with noticeable mental health concerns – augment the danger he represents. This danger thus weighs in favor of pretrial detention.

## I. Conclusion

The government submits that there is clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community if the defendant is released or assure the defendant's presence at future court proceedings, and thus defendant should be held pursuant to 18 U.S.C. § 3142(f)(2)(A). Alternatively, a preponderance of the evidence shows that defendant is a risk of flight, and should be held pursuant to 18 U.S.C. § 3142(f)(2)(A). For the foregoing reasons, as well as those that will be set forth at a hearing on this matter, the government requests that the Court order the pre-trial detention of the defendant.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
New York Bar Number 4444188

By: _/s/ Mary A. Freeman_
MARY A. FREEMAN
Wyoming Bar No. 7-5473
Special Assistant U.S. Attorney
Federal Major Crimes
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Mary.Freeman@usdoj.gov
(202) 803-1628